RECEIVED
AUG 3 0 2019
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| DANNY LACHNEY | DOCKET NO. 1:16-cv-01458 |
| VERSUS | |
| | JUDGE DEE D. DRELL |
| CHASE LINZAY, ET AL. | MAG. JUDGE PEREZ-MONTES |

### MEMORANDUM RULING

Before the court are cross motions for summary judgment filed by defendants, Deputy Sheriff Chase Linzay ("Linzay") and Rapides Parish Sheriff William Earl Hilton ("Hilton") and plaintiff Danny Lachney ("Lachney"). (Docs. 47 and 53, respectively).

### I. BACKGROUND

This lawsuit arises out of events that took place on October 20, 2015 at Rapides Parish Detention Center III ("DCIII"). It was on that date that Lieutenant Jay Patrick Slayter, an investigator and intelligence officer in the corrections department of the Rapides Parish Sheriff's Department, received information that two knives were hidden by DCIII inmates somewhere in the dormitories and a specific inmate was targeted.

Lt. Slayter requested and received permission to use both Special Weapons and Tactics (SWAT) and Corrections Emergency Response Team (CERT) deputies to assist in the search for the knives. Members of SWAT and CERT gathered near DCIII. The teams dressed in tactical and riot gear and received information from Lt. Slayter that they would search certain DCIII dormitories for the two missing knives. The teams made their way to the dormitories they were to search. Linzay was assigned to the dormitory that housed Lachney.

According to Lachney, he was incarcerated at DCIII for the purpose of serving a 20-day sentence on a charge of public intoxication.[1] He was seated on his assigned bunk, a top rack, when he noticed deputies gathering by the main entrance to his dormitory. He heard the officers yelling but couldn't make out the commands. He was scared of being shot so he put his hands up and remained seated on his top bunk. As Linzay approached, he told Lachney to get down. Lachney acknowledged the command, came off of the top bunk, and landed on the floor in a forward leaning position. Linzay advanced on Lachney, turned his weapon around, and struck Lachney on the top of the head with the butt of the shotgun. Lachney suffered a large, open gash which required hospital attention and eight staples to close.

Video evidence of the event shows the deputies enter the dorm and inmates make their way to the floor. In the back, right corner of the dorm, Lachney remains seated on his top bunk. Although the video is grainy, he appears to raise his hands and then come off of his bunk and then Linzay approaches. Once Lachney comes off of his bunk, he disappears from view – blocked by other bunk beds that obstruct the video view.

Lachney filed suit against Linzay in his personal and official capacities for use of excessive force pursuant to 42 U.S.C. §1983 and battery under Louisiana state law. He also filed suit against Sheriff Hilton in his official capacity for failing to establish and/or enforce policies to investigate wrongdoing by his deputies, the administration of punishment, and inmate grievance procedures.

Linzay contends Lachney cannot state a claim for excessive force and even if he can, Linzay is entitled to qualified immunity. Sheriff Hilton asserts he is not liable in his official capacity as Lachney fails to show that any policy, practice, custom, or training was inadequate or

---

[1] Although Lachney alleged violation of his Fourteenth Amendment rights, such rights for use of excessive force are applicable only to pretrial detainees. The record evidence, including Lachney's own deposition testimony, shows Lachney was serving a sentence at DCIII on October 20, 2015.

that anyone was deliberately indifferent to adopting a policy, practice, custom, or training, or that the inadequate policy, practice, custom, or training resulted in Lachney's injury. Defendants further claim Lachney cannot establish a claim for the violation of his due process rights nor is he entitled to punitive damages.

Lachney contends Linzay intentionally used force and that force was both excessive and deadly. Thus, he says Linzay violated his Eight Amendment right to be free from cruel and unusual punishment.

## II. **LAW AND ARGUMENT**

### A. **Summary Judgment Standard**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A dispute of material fact is genuine is the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[W]e consider all evidence in the light most favorable to the party resisting the motion." Seacor Holdings, Inc. v. Commonwealth Ins. Co, 635 F.3d 675, 680 (5th Cir.2011) (internal citations omitted). It is important to note that the standard for summary judgment is twofold: (1) there is no genuine dispute as to any material fact, and (2) the party is entitled to judgment as a matter of law.

The movant has the burden of pointing to evidence proving there is no genuine dispute as to any material fact, or the absence of evidence supporting the nonmoving party's case. Once done, the burden shifts to the nonmoving party to come forward with evidence which demonstrates the essential elements of his claim. Liberty Lobby, 477 U.S. at 250. The nonmoving party must establish the existence of a genuine issue of material fact for trial by showing the evidence, when

viewed in the light most favorable to him, is sufficient to enable a reasonably jury to render a verdict in his favor. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Duffy v. Leading Edge Products, Inc., 44 F.3d 308, 312 (5th Cir.1995). A party whose claims are challenged by a motion for summary judgment may not rest on the allegations of the complaint and must articulate specific factual allegations which meet his burden of proof. Id. "Conclusory allegations unsupported by concrete and particular facts will not prevent and award of summary judgment." Duffy, 44 F.3d at 312, citing Liberty Lobby, 477 U.S. at 247.

**B. 42 U.S.C. §1983**

Section 1983 provides a cause of action against any person who, under the color of law, acts to deprive another person of any right privilege, or immunity secured by the Constitution and laws of the United States. To state a claim under §1983, a plaintiff must allege facts to show (1) that a constitutional right has been violated, and (2) that the conduct complained of was committed by a person acting under color of state law, that is, that the defendant was a state actor. West v. Atkins, 487 U.S. 42 (1998). Lachney asserts he is entitled to summary judgment as Linzay intentionally used excessive force against him.

    i. **Excessive Force**

"In evaluating excessive force claims under the Eighth Amendment, the 'core judicial inquiry' is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Cowart v. Erwin, 837 F.3d 444, 452 (5th Cir. 2016 (quoting Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). To determine whether the officer possessed a subjective intent to punish, the court examines the Hudson v. McMillian factors: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the

4

responsible officials; and (5) any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7; Gomez v. Chandler, 163 F.3d 921, 923 (5th Cir.1999).

Viewing the evidence in the light most favorable to Lachney, there is no doubt that he sustained an injury as a result of the contact. Lachney suffered a laceration to the top of his forehead that required 8 staples to close. As to the remainder of the factors, there are more unanswered questions of fact than there are answers.

Lachney's position is that took no action which would warrant the need to use force. As acknowledged by Linzay, he never made physical or verbal threats to Linzay. He never made attempts to escape. He was unarmed. He was cooperative. He complied with the Linzay's order to get off of his bunk and he never physically charged Linzay. Thus, any use of force was unreasonable under the circumstances.

Linzay contends the use of force was reasonable under the circumstances. While other inmates were already on the ground, Lachney was still sitting in his bunk. He deemed the use of contact via a middle block necessary because Lachney was not moving to the ground and the whereabouts of the missing knives were unknown. Accordingly, Linzay used his shotgun to stop Lachney's forward movement and to take him to the ground. Linzay intended to make contact with Lachney's chest but due to the forward movement of both men and the difference in their heights, he made contact with Lachney's head.

The deposition testimony of both Linzay and Lachney establishes Lachney landed on the ground in a forward leaning position. Beyond that, we have no evidence to definitively support either version of events. The record before us is rife with contradictions. For example, while the incident report states Lachney was non-compliant, Linzay stated in his deposition that he believed Lachney was complying with orders. While Lachney claimed he was fully on the ground when

5

the shotgun hit his head, Linzay claimed Lachney was moving forward and not getting to the ground. Thus, the forward motion between the two caused a collision between Linzay's head and Lachney's gun, not an intentional and malicious strike as Lachney contends. While Linzay claims he used the middle block maneuver to maintain distance and move Lachney to the floor, Lachney argues Linzay struck him in the head with the shotgun as it were a baton. Accordingly, the use of force was not only excessive but constituted deadly force. This is an assertion Linzay adamantly denies.

The only "witnesses" to the event are Linzay, Lachney and the video tape. The men have contradicting stories and we cannot determine from the video what transpired once Lachney landed on his feet, on the floor. Was there enough room between the men for Linzay to effectuate a middle block without hitting Linzay's head? Was Linzay attempting to drop to a prone position on the floor? Was Linzay's shotgun in a position consistent with effecting a middle block or was it upright and aimed for Lachney's head?

To resolve these questions, the court must make credibility calls but to do so would be highly improper. Tarver v. City of Edna, 410 F.3d 745, 753 (5th Cir.2005) citing Bazan v. Hidalgo County, 246 F.3d 481, 492 (5th Cir.2001) ("credibility determination made between the officers' and [the plaintiff's] version of events is inappropriate for summary judgment."). Accordingly, we deny summary judgment in favor of either party with respect to the issue of use of excessive force.

### ii. Qualified Immunity

Linzay was sued in his individual capacity and he asserted the affirmative defense of qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555

U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "Qualified immunity balances two important interests – 'the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.'" Id. "As a mater of public policy, qualified immunity provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335 (1986).

When a defendant pleads qualified immunity as an affirmative defense and moves for summary judgment on that basis, a court must decide whether the facts alleged by the plaintiff show the officer's conduct violated his constitutional right that was clearly established at the time of the alleged misconduct. Pearson, 555 U.S. at 814-815. There is no doubt that prisoners have a cause of action for excessive force in violation of the Eighth Amendment when "prison officials maliciously and sadistically use force to cause harm." Hudson v. McMillian, 501 U.S. 1, 23 (1992). What is in doubt is whether Linzay's use of force was objectively reasonable under the circumstances. As the court cannot establish whether Linzay's use of force was a good faith effort to maintain discipline or a malicious use of force to cause harm, we cannot conclude he is entitled to a qualified immunity defense. Accordingly, Linzay's request for summary judgment on this issue is denied.

### iii. Sheriff Hilton

When a sheriff is sued in his official capacity, the claim is treated as an action against the entity for which he is an agent. Monell v. Dept. of Social Services, 436 U.S. 658 (1978). Liability attaches when the execution of a governmental entity's policy or custom results in a constitutional violation. Id. at 694. Establishing such a claim requires the plaintiff to identify an official policy that was adopted and promulgated by the policymaker or a pattern of similar constitutional

7

violations that indicate the existence of an informal custom or practice. Valle v. City of Houston, 613 F.3d 536, 542 (5th Cir.2010) (citation omitted).

In this case, Sheriff Hilton is an agent of the Rapides Parish Law Enforcement District, and the claim against him in his official capacity is a claim against it. Lachney does not allege that Sheriff Hilton promulgated a generally applicable statement of policy, acted in a manner that violated a constitutional right; nor that he failed to act affirmatively despite an obvious need to do so. See Burge v. Parish of St. Tammany, 187 F.3d 452, 471 (5th Cir.1999) (citations omitted). Rather, he alleges Sheriff Hilton ratified Linzay's unconstitutional conduct.

Lachney alleges Sheriff Hilton's authorized policymakers, the Warden of DCIII and Deputy Divers, allowed Linzay, who had a history of use of excessive force, to act without ramifications and to ratify the use of excessive force against Lachney via a falsified after-action report. Lachney further contends the "single incident" exception is applicable to hold Sheriff Hilton liable for the actions of the warden and Divers. Additionally, Sheriff Hilton himself ratified the conduct when he maintained the falsified after-action report in his files.

Ratification occurs "when a subordinate's decision is subject to review by the [government entity's] authorized policymakers" and "the authorized policymakers approve a subordinate's decision and the basis for it." City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988), the reasoning being that the decision of the final policymaker is "final." Id. Ratification creates liability where "final policymakers are held effectively to have made policy or condoned creation of a custom by ratifying the unconstitutional or illegal actions or subordinate officers or employees." Turner v. Upton County, 915 F.2d 133, 137 (5th Cir.1990). Ratification will not be found where a policymaker accepts the deputy's version of events and "that version [does] not

show that the deputies' actions were manifestly indefensible." Coon v. Ledbetter, 780 F.2d 1158,1162 (5th Cir.1986).

The Fifth Circuit has "recognized ratification as a theory of liability against a municipality when the behavior of a state actor is approved by the policymaker. Henderson v. Anderson, 463 Fed.Appx. 247, 250 (5th Cir.2012) (citing Valle v. City of Houston, 613 F.3d 536, 542-43 (5th Cir.2010). "However, [the Fifth Circuit has] refused to find ratification simply because a municipality failed to punish an actor for those actions on one occasion and have refused to infer an official policy from a single isolated failure to punish an officer's misconduct." Id. at 250 (citing Faire v. City of Arlington, 957 F.2d 1268, 1278 (5th Cir.1992). See also Medina v. Ortiz, 623 Fed.Appx. 695, 701 (5th Cir.2015) (refusal to find ratification where the sheriff "accepted the officer's use of force report, refused to turn over evidence until the lawsuit was filed, and defend[ed] the deputies' actions in the case."); Peterson v City of Fort Worth, 588 F.3d 838, 848 (5th Cir.2009) (refusal to find ratification based on "a policymaker who defends conduct that is later shown to be unlawful.").

Lachney has not provided evidence of a history of use of excessive force by Linzay nor has he established a pattern or practice of covering up deputies' use of excessive force. Accordingly, under Fifth Circuit precedent we find the single use exception cannot be used in this case to support ratification.

Lachney has also failed to provide evidence establishing anyone other than Sheriff Hilton was an authorized policymaker. He alleged, without more, that Sheriff Hilton delegated his authority as a final policymaker to the Warden of DCIII. However, the Warden of DCIII is not mentioned by name nor is there any alleged action by the warden. Merely granting an employee some discretionary authority does not make one a final policymaker. See Prapotnik, 485 U.S. 112.

9

In light of the foregoing, we find the claims against Sheriff Hilton in his official capacity should be dismissed.

### iv. **Punitive damages**

Under §1983, punitive damages are discretionary and "may be awarded only if the official conduct is motivated by evil intent or demonstrates reckless or callous indifference to a person's constitutional rights." Sockwell v. Phelps, 20 F.3d 187, 192 (5th Cir.1994) (internal quotations omitted). As there is a question regarding Linzay's intent, we deny summary judgment with respect to this matter.

Summary judgment is granted with respect to the extent Lachney seeks punitive damages from Sheriff Hilton in his official capacity. A claim against Sheriff Hilton in his official capacity is actually a suit against the Rapides Parish Law Enforcement District. As punitive damages may not be awarded against a government entity, in this case the Rapides Parish Law Enforcement District, summary judgment is proper. See City of Newport v. Fact Concerts, 453 U.S. 247, 271 (1981) ("a municipality is immune from punitive damages under 42 U.S.C. §1983).

### C. **Louisiana State Law Claims**

Lachney asserts that he is entitled to summary judgment on his claim that Sheriff Hilton is liable to him for the battery he sustained at the hands of Sheriff Hilton's employee. As there is yet no finding in favor of Lachney that excessive force was used, there is no basis upon which to grant summary judgment at this juncture.

### III. **CONCLUSION**

In light of the foregoing, we grant in part and deny in part the defendants' motion for partial summary judgment. Lachney's claims against Sheriff Hilton will be dismissed with prejudice but

we retain all other claims for disposition in the future. Additionally, we deny Lachney's cross motion for summary judgment. We will issue a judgment in conformity with these findings.

**SIGNED** this 30 day of August 2019, at Alexandria, Louisiana.

                                                **JUDGE DEE D. DRELL**
                                           **UNITED STATES DISTRICT COURT**